UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 17-20526-TPA |
| UNIQUE VENTURES GROUP, LLC, ) | |
| ) | Chapter 11 |
| Debtor, ) | |
| ) | JUDGE THOMAS P. AGRESTI |
| ) | |
| ALBERT'S CAPITAL SERVICES, LLC, as ) | Adv. No: |
| Plan Administrator, ) | |
| ) | Doc. No.: |
| Plaintiff, ) | |
| vs ) | Related to Doc. No.: |
| ) | |
| DAMON'S OF NORTH AMERICA, LLC, ) | Hearing Date: |
| ELITE RESTAURANT GROUP, L.P., ) | |
| JACK KUHN, FUTURES663 LLC, ) | Hearing Time: |
| JOSEPH RUSNOCK, MICHAEL ) | |
| SABATINI, AND RIBS OF ) | |
| WILMINGTON, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**COMPLAINT (I) TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 547, 548, 549, AND 550 and 12 Pa.C.S.A. §§ 5101 *et seq.*; (II) FOR TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 542; (III) FOR BREACH OF CONTRACT; (IV) FOR UNJUST ENRICHMENT; (V) FOR CONVERSION; (VI) TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502; AND (VII) FOR RELATED RELIEF**

As Plaintiff in this action, Albert's Capital Services, LLC (the "Plan

Administrator"), as Plan Administrator of the estate of Unique Ventures Group, LLC,

files this *Complaint (I) to Avoid and Recover Transfers Pursuant to 11 USC §§ 544, 547,*

*548, 549, and 550 and 12 Pa.C.S.A. §§ 5101 et seq.; (II) For Turnover of Property of the*

*Estate Pursuant to 11 U.S.C. § 542; (III) for Breach of Contract; (IV) for Unjust*

1

*Enrichment; (V) for Conversion; (VI) to Disallow Claims Pursuant to 11 USC § 502; and (VII) For Other Relief* (the "Complaint") against Defendants Damon's of North America, LLC ("DNA"), Elite Restaurant Group, L.P. ("ERG"), Jack Kuhn ("Kuhn"), Joseph Rusnock ("Rusnock"), Futures663, LLC ("Futures663"), Michael Sabatini ("Sabatini"), and Ribs of Wilmington, Inc. ("Wilmington" and with DNA, ERG, Kuhn, Rusnock, Futures663 and Sabatini, "Defendants") as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 USC §§ 157 and 1334.

2. Venue is proper in this District pursuant to 28 USC § 1409.

3. This matter is a core proceeding pursuant to 28 USC § 157(b)(2)(A),(B), (E), (F), (H), and (J).

4. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, Plaintiff consents to the entry of a final order or judgment in the event this proceeding were determined to be non-core.

## The Parties

5. Plaintiff is Albert's Capital Services, LLC, as Plan Administrator for the estate of Unique Ventures Group, LLC ("Unique" or "Debtor") which has an address at 200 Dinsmore Avenue, Pittsburgh, Pennsylvania 15205.

6. Defendant DNA is a Pennsylvania limited liability company with its address at 100 First Avenue, Suite 800, Pittsburgh, PA 15222, which is the entity into which valuable property of the Debtor was fraudulently transferred, specifically, intellectual property and contract rights in and to the DAMON'S trademark and restaurant franchise (the "DAMON'S Assets").

7. Defendant ERG is a Pennsylvania limited partnership with an address at First & Market Building, Suite 100, First Avenue, Pittsburgh, PA 15222, and which is owned 50% by Attorney Ronald Conway and 50% by Michael I. Frangoulis, Jr.,[1] which may be the entity into which DNA has attempted to launder some of the intellectual property it misappropriated from the Debtor.

8. Defendants Michael Sabatini, whose address is 470 Streets Run Road, Pittsburgh, PA 15236, Joseph Rusnock, whose address is 1000 Lengel Avenue, Natrona Heights, PA 16065, and Jack Kuhn, whose address is 4318 Royal St. George Drive, Avon, Ohio 44011, are individuals who siphoned assets belonging to the Debtor, specifically franchise license fees relating to the DAMON'S Assets, to themselves through DNA.

9. Defendant Futures663 LLC is the alter ego of Defendant Rusnock and has its address at 663 Woodcrest Drive, Pittsburgh, PA 15205.

10. Defendant Wilmington is an Ohio corporation whose agent for service of process is David W. Camp at 303 Hiatt Avenue, Wilmington, Ohio 45177.

**Statement of Operative Facts**

11. Plaintiff incorporates the foregoing in full.

12. The Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") on February 13, 2017 (the "Petition Date")

13. On January 24, 2018, this Court entered the *Order Confirming Second (Amended) Chapter 11 Plan* [Docket No. 950] (the "Confirmation Order"), thereby

---

[1] Upon information and belief, Michael I. Frangoulis, Jr., passed away on or about March 28, 2018. The Estate of Michael Frangoulis was opened in the Wills/Orphans' Court Division of the Court of Common Pleas of Allegheny County, Pennsylvania, docketed at Case Number 021802363, on or about April 12, 2018.

confirming the Second Amended Chapter 11 Plan (the "Plan") and Second Amended Disclosure Statement filed by the Official Committee of Unsecured Creditors (the "Committee").

14. The Confirmation Order vested the Plan Administrator with the rights and powers set forth in the Plan Administrator Agreement, including the right to facilitate the liquidation of the Debtor's assets, make distributions on account of Claims as provided in the Plan, object to Claims and settle, compromise, withdraw, or litigate to judgment such objections, pursue recoveries available under Chapter 5 of the Bankruptcy Code, and wind down the Debtor.

15. All of Defendants Sabatini, Rusnock, Kuhn, and Futures663 were either members of the Debtor or else controlled members of the Debtor for all time relevant hereto.

16. In September 2013, the Debtor purchased various assets from the Trustee of Damon Restaurants, Inc. out of the bankruptcy proceedings in the Western District of Pennsylvania Case No. 09-27920, as reflected in the Asset Purchase Agreement attached as Exhibit A hereto.

17. That purchase was effective June 27, 2014, as evidence by the Bill of Sale attached as Exhibit B hereto and the Assignment and Assumption Agreement relating to the transfer of contract rights attached as Exhibit C hereto.

18. The total sale price paid by Debtor for the DAMON'S Assets was, on information and belief, no less $1.2 million.

19. At some point in time after Debtor's purchase of the DAMON'S Assets, they were transferred to DNA as evidenced, in part, by the fact that DNA is identified by the

US Patent and Trademark Office as the last known licensee of those assets as set out in Exhibit D hereto.

20.     The transfer of the DAMON'S Assets from Debtor to DNA was recorded in the Note attached as Exhibit E hereto (the "Note").

21.     On information and belief, no payments have ever been made on the Note.

22.     For a period from August 2014 through September 2015, DNA actively collected franchise and license fees from the DAMON'S Assets and then distributed them to Defendants Sabatini, Rusnock, and Kuhn.

23.     Defendant Rusnock received some of his distributions from DNA through an entity he controls called Futures663 LLC and through payments of country club membership dues.

24.     Defendants Sabatini, Rusnock, and Kuhn collected over $230,000 through DNA in that period of time.

25.     On information and belief, monies were routinely transferred from Unique to DNA for no corresponding legitimate business purpose.

26.     On information and belief, beginning in November 2015, DNA ceased its efforts collecting franchise and license fees through the DAMON'S Assets.

27.     On information and belief, the reason for that cessation was for DNA to "save up" its accounts receivable so that it may conceal its business and then resume its business activities after this bankruptcy and the preceding receivership of Debtor in Pennsylvania state court were concluded.

28.     Despite that apparent cessation of collection activities by DNA, Defendants Kuhn, Futures663, Rusnock, and Sabatini continued to cause Unique to transfer monies to DNA at least into 2016 for no legitimate business purpose.

Document      Page 6 of 16

29. On information and belief, Defendants Kuhn, Futures663, Rusnock, and Sabatini then distributed those monies to themselves.

30. Also, effective September 29, 2015, DNA attempted to transfer its rights in the DAMON'S Assets' trademarks to Elite LP as reflected in the Assignment of Trademarks attached as Exhibit F hereto.

31. ERG thereafter on at least one occasion attempted to enforce its purported trademark rights against third parties, as reflected in the settlement correspondence sent on behalf of ERG, a copy of which is attached as Exhibit G hereto.

32. On information and belief, the reason for that attempted transfer was to further attempt to shield the DAMON'S Assets from creditors, including from these bankruptcy proceedings.

33. On January 17, 2019, the Plan Administrator caused to be issued to DNA a demand for payment of the Note, a copy of which is attached hereto as Exhibit H.

34. As of the filing of this Complaint, the Note remains unpaid by DNA in the amount of $1,525,676.66, together with continuing interest, fees and costs, including reasonable attorneys' fees.

**Count One**
**Avoidance of Fraudulent Transfers**
**11 U.S.C § 544 and 12 Pa. C.S.A. § 5101, et seq.**

35. Plaintiff restates the above as if set out fully herein.

36. Pursuant to section 544 of the Bankruptcy Code, the Plaintiff has as of the Petition Date, and without regard to any knowledge of the Trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the Debtor by, among other things, a hypothetical lien creditor.

37. Pursuant to Title 12 of the Pennsylvania Consolidated Statutes § 5101, the Plaintiff may therefore avoid any transfers made within the four-year period prior to the Petition Date or, if later, within one year after the transfer was or reasonably could have been discovered by the Plaintiff (collectively, the "State Law Avoidance Period").

38. The transfer of the DAMON'S Assets and the distributions from DNA to Defendants Sabatini, Rusnock, Futures663, and Kuhn (the "Transfers") made by the Debtor during the State Law Avoidance Period to or for the benefit of the Defendants were made either: (1) with the actual intent to hinder, delay, or defraud a creditor of the Debtor; or (2) without the Debtor receiving a reasonably equivalent value in exchange for the Transfers, when (a) the Debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or (b) the Debtor intended to incur or believed or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

39. The Transfers made during the State Law Avoidance Period to or for the benefit of the Defendants was made without the Debtor receiving a reasonably equivalent value in exchange for the transfers, and (a) the Debtor was insolvent at the time of each such Transfer or (b) the Debtor became insolvent as a result of such Transfer.

40. The Plaintiff may therefore avoid all such Transfers made during the State Law Avoidance Period pursuant to section 544 of the Bankruptcy Code and 12 Pa. C.S.A. § 5101, et seq.

## Count Two
## Avoidance of Fraudulent Transfers
## 11 U.S.C. § 548

41. Plaintiff restates the above as if set out in full herein.

42. Pursuant to section 548 of the Bankruptcy Code, the Plaintiff may avoid transfers to the Defendants made at any time within the 2-year period prior to the Petition Date (the "Two Year Period").

43. The Transfers made during the Two Year Period were transfers of property in which the Debtor had an interest. Defendants may have received additional avoidable transfers which may be discovered during the discovery process.

44. The Transfers made during the Two Year Period were made with actual intent to hinder, delay, or defraud entities to which the Debtor was or became, on or after the date each such Transfer was made, indebted.

45. In the alternative, with respect to each Transfer made during the Two-Year Period, the Debtor received less than reasonably equivalent value in exchange for each such Transfer and: (1) the Debtor was insolvent on the date that each such Transfer was made or became insolvent as a result of such Transfer; (2) the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or (3) the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

46. Plaintiff may avoid all such Transfers made during the Two Year Period pursuant to section 548 of the Bankruptcy Code. Accordingly, Plaintiff is entitled to an order and judgment against Defendants: (i) avoiding the transfers under Section 548(b) of the Bankruptcy Code; and (ii) entitling Plaintiff to recover the Transfers or the value of the Transfers from Defendants under Section 550(a) of the Bankruptcy Code, together with an award of pre-and-post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment.

## Count Three
## Breach of Fiduciary Duty

47. Plaintiff restates the above as if set out fully herein.

48. As members of the Debtor, Defendants Sabatini, Rusnock, Kuhn, and Futures663 owed it fiduciary duties.

49. By fraudulently transferring the DAMON'S Assets to DNA with no exchange of value, and by taking distributions for their own benefit of the proceeds of the DAMON'S Assets, those defendants breached their fiduciary duties and usurped corporate opportunities from Debtor.

50. Debtor is entitled to damages in an amount to be determined at trial therefor.

## Count Four
## Disgorgement

51. Plaintiff restates the above as if set out fully herein.

52. Defendants Sabatini, Rusnock, Kuhn, and Futures663 laundered the proceeds of their theft of Debtor's assets through DNA in the form of distributions to themselves.

53. Defendants must disgorge all laundered payments of Debtor's funds which they received, from whatever source.

## Count Five
## Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542

54. Plaintiff restates the above as if set out fully herein.

55. Should it be determined that Plaintiff cannot avoid the transfer of the DAMON'S Assets to DNA, Plaintiff seeks a judgment against Defendants to satisfy the Note.

56. Property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. *See* 11 U.S.C. § 541.

57. Section 542(a) of the Bankruptcy Code provides, in pertinent part, that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under 363 of this title. . . shall deliver to the trustee, and account for, such property or the value of such property. . ." *See* 11 U.S.C. § 542(a).

58. As set forth herein, Plaintiff has demanded that DNA satisfy the amount due and owing to the Debtor's estate under the Note.

59. Defendants have failed to satisfy the Note, which is due and payable from DNA to the Debtor upon ten (10) days written notice.

60. Plaintiff believes it is entitled to a judgment compelling Defendants to turnover the amount necessary to satisfy the Note due and owing to the Debtor, plus any and all related fees, costs, and/or damages that may be proven at trial.

## Count Six
## Breach of Contract Against Defendants

61. Plaintiff restates the above as if set out fully herein.

62. To the extent Plaintiff cannot avoid the transfer of the DAMON'S Assets to DNA, DNA has breached its obligations under the Note by failing to satisfy the Note after receipt of a written demand from Plaintiff.

63. DNA had a contractual obligation to satisfy the Note upon written demand from Plaintiff.

64. Plaintiff caused to be sent a written demand to DNA to satisfy the Note on January 17, 2019.

65. DNA has failed to satisfy the Note upon written demand from Plaintiff, thereby damaging the Debtor and the Debtor's Estates.

66. Accordingly, DNA must pay to Plaintiff, on behalf of the Debtor's estate, the amount necessary to satisfy the Note, plus any and all related fees, costs, and/or damages recoverable under the Note as proven at trial.

### Count Seven
### Unjust Enrichment

67. Plaintiff restates the above as if set out fully herein.

68. To the extent Plaintiff cannot avoid the transfer of the DAMON'S Assets to DNA, Defendants have been unjustly enriched by its misappropriation of the DAMON'S Assets.

69. Defendants received the benefit of the transfer of the DAMON'S Assets from the Debtor to DNA.

70. Defendants appreciated the benefit of the transfer of the DAMON'S Assets, as Defendants received distributions from the DAMON'S Assets of no less than $230,000.00.

71. It would be inequitable and unjust for the Debtor and the Debtor's estate to allow Defendants to retain the benefits received from the DAMON'S Assets, as the Debtor would have received said benefits but for the misappropriation of the DAMON'S Assets by DNA.

72. Accordingly, Plaintiff prays for the entry of a judgment against Defendants in an amount to be proven at trial, plus any and all related fees, costs, and/or additional damages that are just and appropriate.

## Count Eight
## Conversion

73. Plaintiff restates the above as if set out fully herein.

74. Upon information and belief, the DAMON'S Assets are property of the Debtors' bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.

75. Upon information and belief, Defendants have exercised dominion and control over the DAMON'S Assets due to Defendants' misappropriation of the DAMON'S Assets in favor of DNA.

76. Upon information and belief, Defendants' exercise of dominion and control over the DAMON'S Assets has deprived the Debtor and the Debtor's estate of the proceeds derived from the DAMON'S Assets and damaged the Debtor and its estate.

77. Accordingly, Defendants must pay to the Plaintiff and/or the Debtor's estate all value realized from the DAMON'S Assets, plus any and all related fees, costs and/or damages that may be proven at trial.

## Count Nine
## Disallowance of Defendants' Claims Pursuant to 11 U.S.C. § 502

78. Plaintiff restates the above as if set out fully herein.

79. Defendants are individuals from which property is recoverable under Section 550 of the Bankruptcy Code.

80. Defendants are the initial transferee of each such transfer, the immediate or mediate transferee of such initial transferee, or the individual and/or entity for whose benefit the transfers were made.

81. Defendants have not paid to Plaintiff the amounts for which Defendants are liable to Plaintiff and/or the Debtor's estate.

82. Pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of Defendants and/or their assignee(s) against the Debtor's estate must be disallowed until such time as Defendants pay to Plaintiff all amounts sought herein.

## Count Ten
## Breach of Contract Against Claim of Ribs of Wilmington, LLC

83. Prior to the filing of this Complaint, Wilmington filed an unsecured and unliquidated claim, identified as Claim No. 70-1, in the amount of $205,205.00 (the "Wilmington Claim").

84. The Wilmington Claim is expressly contingent upon a determination by this Court (or another court of competent jurisdiction) that the Debtor is or was the owner of alleged franchisor's rights (the "Franchisor Rights") under a putative "Renewal Franchise Agreement" (the "Franchise Agreement") under which Wilmington may be alleged to be the franchisee with respect to a restaurant owned by Wilmington, in Wilmington, Ohio

85. To the extent Plaintiff avoids and recovers the transfer of the DAMON'S Assets, those assets would include the rights under the Franchise Agreement.

86. Upon information and belief, Wilmington has failed and/or refused to pay the amounts due and owing under the Franchise Agreement.

87. Plaintiff is entitled to the amounts due and owing from Wilmington under the Franchise Agreement, plus any and all related fees, costs and/or damages that may be proven at trial.

## Count Eleven
## Objection to Claim of Ribs of Wilmington, LLC

88. To the extent Plaintiff avoids and recovers the transfer of the DAMON'S Assets, which would include the rights under the Franchise Agreement, Plaintiff objects to the allowance of the Wilmington Claim.

89. Upon information and belief, Wilmington has failed and/or refused to remit royalty payments due and owing under the Franchise Agreement in an amount that far exceeds the amount of the Wilmington Claim.

90. Plaintiff is also without knowledge or information sufficient to form a belief as to the accuracy of the itemized charges set forth in the addendum to the Wilmington Claim and demands strict proof thereof at time of trial.

91. To the extent Plaintiff is unable to avoid and recover the transfer of the DAMON'S Assets, which would include the rights under the Franchise Agreement, Plaintiff objects to the allowance of the Wilmington Claim, as the Debtor is not liable for the amount clamed in the Wilmington Claim.

WHEREFORE, the Plaintiff prays for judgment against the Defendants as follows:

A. On Count One, for an Order avoiding all Transfers made by the Debtor to the Defendants during the State Law Avoidance Period pursuant to section 544 of the Bankruptcy Code and Pa. C.S.A. § 5101, et seq.;

B. On Count Two, for an Order avoiding all Transfers made by the Debtor to the Defendants during the Two-Year Period pursuant to section 548 of the Bankruptcy Code;

C. On Count Three, for an Order in Plaintiff's favor in an amount to be determined a trial due to Defendants' breach of their fiduciary duties;

D. On Count Four, for an Order that Defendants disgorge all payments made to them on behalf of Debtor relating to the DAMON'S Assets from whatever source;

E. On Count Five, for an Order compelling Defendants to turnover the amount necessary to satisfy the Note, together with any and all related fees, costs and/or damages that may be proven at trial

F. On Count Six, for an Order in Plaintiff's favor in an amount to be determined at trial, together with any and all related fees, costs and/or damages that may be proven at trial, due to Defendants' breach of contract;

G. On Count Seven, for an Order in Plaintiff's favor in an amount to be determined at trial, together with any and all related fees, costs and/or damages that may be proven at trial, due to Defendants' unjust enrichment at the expense of the Debtor;

H. On Count Eight, for an Order in Plaintiff's favor in an amount to be determined at trial, together with any and all related fees, costs and/or damages that may be proven at trial, due to Defendants' conversion of the DAMON'S Assets;

I. On Count Nine, for an Order disallowing any claim(s) of Defendants against the Debtor or the Debtor's estate;

J. On Count Ten, for an Order in Plaintiff's favor in an amount to be determined at trial, together with any and all related fees, costs and/or damages that may be proven at trial, due to Wilmington's breach of contract

K. On Count Eleven, for an Order disallowing the Wilmington Claim against the Debtor or the Debtor's estate; and,

L. To award Plaintiff its costs and reasonable attorney's fees pursuant to Rule 54 of the Federal Rules of Civil Procedure its costs and expenses incurred in

connection with bringing this proceeding, its reasonable costs and attorney fees, and any other relief to which it is entitled.

        Respectfully Submitted,
        **Ross M. Babbitt Co., LPA**


  /s/ Ross M. Babbitt
Ross M. Babbitt (Ohio 0072946)
(admitted *pro hac vice*)
   rbabbitt@babbitt-lawfirm.com
1382 West 9th Street, Suite 220
Cleveland, Ohio  44113
(216) 623-6346

*Special Litigation Counsel for Plaintiff Albert's Capital Services, LLC, Plan Administrator to Unique Ventures Group, LLC*

and

WHITEFORD, TAYLOR & PRESTON LLP

  /s/ Daniel R. Schimizzi
Michael J. Roeschenthaler (PA ID No. 87647)
Daniel R. Schimizzi (PA ID No. 311869)
200 First Avenue, Third Floor
Pittsburgh, PA  15222
T: (412) 275-2401
F: (412) 275(2404)

*Counsel to Plaintiff Albert's Capital Services, LLC, Plan Administrator to Unique Ventures Group, LLC*